**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SHAWN GREEN,**

                     **Petitioner,**

                                            **Civil No. 9:00-CV-0003
            v.                                    (GLS)**

**DONALD SELSKY,**

                     **Respondent.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PETITIONER:**

SHAWN GREEN
97-A-0801, *Pro se*
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

**FOR THE RESPONDENT:**

HON. ELIOT SPITZER          MARY E. HILL, ESQ.
New York State Attorney      Assistant Attorney General
General - Albany Office
The Capitol
Albany, New York 12224

**Gary L. Sharpe
U.S. District Judge**

**DECISION AND ORDER**

Petitioner, *pro se* Shawn Green (Green), a New York State prison inmate, filed a writ of habeas corpus asserting four separate grounds in support of his claim that he was wrongfully sentenced to eighteen months of confinement in the special housing unit and two months loss of good time. *See Dkt. No. 1*. In responding to the petition, the Attorney General for the State of New York (Attorney General), acting on respondent's behalf, filed an answer and memorandum of law in opposition to the petition. *Dkt. Nos. 5, 6*. For the following reasons, the court finds that: (1) the hearing officer's determination is supported by substantial evidence, and (2) all procedural due process requirements were satisfied.

**I.     Background**

    **A.     The Incident**

On May 21, 1997, Green was served with two misbehavior reports at Shawangunk Correctional Facility where he was incarcerated. A report dated May 20 and filed by Correction Officer D. Ingraham (Ingraham) charged Green with assault, refusing a direct order, and failing to comply with search procedures. Ingraham stated in his report that he responded to an alarm in B-2 housing. In doing so, he ordered Green to come out of the

2

yard and submit to a pat frisk.  According to the report, Green cursed at Ingraham and walked into his cell without submitting to a pat frisk.  Green refused to comply with two additional orders to submit to a pat frisk.  Ingraham noted in his report that Green exited his cell, yelling racial epithets.  When Ingraham physically tried to stop Green, Green swung his arm out and hit Ingraham in the face.

The second misbehavior report, composed by Correction Officer Charles Fiorentino (Fiorentino), charged Green with refusing to obey an order, assaulting staff, engaging in violent conduct, and participating in an unauthorized assembly.  Fiorentino stated in his report that Green refused to submit to his order of a pat frisk.  He also stated that Green yelled racial epithets at him and moved toward him in a threatening way.

### B.    The Tier III Disciplinary Hearing

Green was subject to a disciplinary hearing on May 29, 1997.  At that hearing, he received assistance from Correction Counselor R. Rascoe (Rascoe), and Rascoe testified at that hearing.[1]  The two misbehavior reports were read into the record, and the unauthorized assembly charge

---

[1] Green complained that his assistant had not provided him with copies of several Department directives of the B-2 logbook entries related to the incident.  However, Rascoe testified that there were no entries in the logbook pertaining to Green.

was dismissed. Green pled not guilty to the remaining charges. Two inmates testified that there was a fight inside B-Block, and the inmates were ordered to submit to searches. Ingraham and Fiorentino also testified about the incident. Their testimony was consistent with the context of their written reports. Another inmate testified that he saw Green's cell door open and a confrontation ensue between him and some of the correction officers, but he stated he was unable to see the events in detail. The hearing officer read into the record the nurse's report of her examination of Green after the incident. It stated that he had a headache and a 1/4 inch cut at the corner of his mouth. Later that day, he complained of pain in his side and small scratches on his torso.

At the hearing, Green was found guilty of assault on staff, refusing a direct order, and refusing to follow frisk procedures. He was sentenced to eighteen months in the special housing unit (SHU) with credit for time served before the hearing and twelve months loss of privileges. The hearing officer also recommended the loss of two months of good time.

Green filed an administrative appeal. As a result, the disposition was modified so that the penalty was reduced to twelve months at SHU. The loss of privileges and recommended loss of good time remained the same.

4

### C. State Court Proceedings

In November 1997, Green commenced an action pursuant to Article 78 of the New York Civil Practice Law and Rules (C.P.L.R.) claiming that he was denied due process in the disciplinary hearing and that he was improperly charged. By order dated March 11, 1998, the matter was transferred to the Appellate Division, Third Department for a determination of the merits. By Decision and Judgment dated September 23, 1999, the Appellate Division held that the hearing officer's determination was supported by substantial evidence and that Green's assertions of procedural irregularities were meritless. Green's application for leave to appeal to the New York Court of Appeals was denied on December 21, 1999.

## II. Discussion

### A. Substantial Evidence

Green maintains that the hearing officer lacked substantial evidence to support his determination of Green's guilt. Due process requires that a disciplinary determination be supported by "some evidence." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). "This standard is extremely tolerant and is satisfied

if 'there is any evidence in the record that supports' the disciplinary ruling." *Id.* (citing *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). Nevertheless, as the Second Circuit explained, the "some evidence standard requires some reliable evidence." *Id.*

Here, the evidence substantially supports the hearing officer's determination. He based his determination on the misbehavior reports and the testimony of Correction Officers Ingraham and Fiorentino. Both officers wrote and testified that they ordered Green to submit to a pat frisk and Green cursed at them and refused to obey. Ingraham also reported that Green struck him in the face, causing him to bruise. Two inmates confirmed that they were subject to a pat frisk search, and another correction officer testified that Green was hostile and cursed at the officers. This evidence substantially supports the hearing officer's determination of Green's guilt. Accordingly, there was substantial evidence for the hearing officer's determination.

### B. Due Process Requirements

Green complains that his procedural due process rights were violated at the disciplinary hearings, and that therefore, the recommendation that he lose two months of good time credits must be reversed. More specifically,

6

Green claims that the hearing was not commenced within the proper time, the legal assistance was ineffective, and the hearing officer was impartial. He also claims that the penalty imposed was too severe. Green's contentions are meritless.

In order to prevail on a claim alleging the violation of a liberty interest without procedural due process, an inmate must first establish that he enjoyed a protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). The due process clause of the Fourteenth Amendment does not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates so long as such changes are "within normal limits or range of custody which the conviction has authorized the State to impose." *Id.* at 478. (internal quotation omitted); *Benjamin v. Fraser*, 264 F.3d 175, 189 (2d Cir. 2001) (quoting *Sandin*); *Cox v. Malone*, 199 F. Supp.2d 135, 142 (S.D.N.Y. 2002) (citation omitted). Instead, the due process clause protects against restraints or conditions of confinement that "exceed [ ] the sentence in... an unexpected manner." *Sandin*, 515 U.S. at 848; *Moore v. New York State Dept. of Corr. Servs.*, 2001 WL 536265, at *3 (N.D.N.Y. May 10, 2001) (Scullin, J.).

"In determining whether an inmate has received procedural due

7

process, a court must: (1) determine whether the party had a protected liberty interest in not being confined in the manner about which he complains and, if so, (2) determine whether the deprivation of that liberty interest occurred without due process of law." *See Sealey v. Giltner*, 116 F.3d 47, 51-52 (2d Cir. 1997) (quoting *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996)).

### 1. Timing of the Hearing

Green claims that the hearing was improper because it was not commenced twenty-four hours after legal assistance has been completed. A hearing may not begin until twenty-four hours after an inmate's initial meeting with an assistant. *See* NYCRR 254.6(a); *Matter of Samuels v. Goord*, 242 A.D.2d 841 (3d Dept. 1997). Green and his assistant first met on May 22, and the hearing began on May 29. Therefore, the hearing was timely.

Green next maintains that the hearing was commenced too late because it was not commenced within seven days of his confinement in SHU. While current state regulations provide for hearings to be held within seven days of confinement and completed within 14 days, the alleged two day delay does not amount to a denial of due process. Although "States

may under certain circumstances create liberty interests which are protected by the Due Process Clause, such interests will be generally limited to freedom from restraint [that]... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Blouin v. Spitzer*, 356 F.3d 348 (2d Cir. 2003). The Second Circuit, in *Gutierrezz v. Coughlin*, 841 F.2d 484, 486 (2d Cir. 1988), held that the regulations requiring a disciplinary hearing to be commenced within seven days of confinement did not give rise to a protected liberty interest. Therefore, because no liberty interest has been implicated by the two day delay, Green's due process rights have not been violated.

### 2. Prehearing Assistance

Green argues that his assistant's failure to obtain all of the documents he requested and to answer significant questions violated his due process rights. Unlike a criminal defendant, a prisoner is not entitled to counsel at a prison disciplinary hearing but is generally entitled to the assistance of a staff member or a fellow inmate. *Ayers v. Ryan*, 152 F.3d 77, 80-81 (2d Cir. 1998). "When the inmate is disabled, either by being confined full-time to SHU or transferred from the prison in which the incidents occurred, the duty of assistance is greater because the inmate's

9

ability to help himself is reduced." *Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988). However, an assistant's role is to act as "merely a surrogate for the inmate, not a legal adviser or advocate." *Dawes v. Carpenter*, 899 F.Supp. 892, 896 (N.D.N.Y. 1995). Additionally, the Second Circuit has noted that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial." *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991).

Here, Green received adequate assistance. Green's assistant was called to the disciplinary hearing and questioned about his failure to supply Green with the B-2 log book he requested. The assistant explained that the log book contained no relevant entries. Green has not alleged facts egregious enough to amount to an ineffective assistance of counsel or a denial of his due process. Accordingly, Green's due process rights have not been violated.

### 3.   Failure to present evidence

10

Green claims that his due process rights were violated when his requests to call the block officer as a witness at the disciplinary hearing were denied. The Supreme Court has held that prison officials are "required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but...they may do so either by making the explanation a part of the administrative record in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing." *Ponte v. Real*, 471 U.S. 491, 497 (1985) (internal quotations omitted).

Here, the issue to be determined by the hearing officer was whether Green refused to submit to an order for a pat frisk. As such, the exclusion of the block officer's testimony prior to the incident in the yard and before the fight was irrelevant. Additionally, Green has not demonstrated that the hearing officer was biased. Since Green has not established that his due process rights were violated by the denial of his requests to call the block officer as a witness, the court finds that this aspect of his petition is without merit. *See Gill v. Jones*, 2001 WL 1346012, at *6 (S.D.N.Y. Nov. 1, 2001).

  **4.**  **The Penalty**

11

Lastly, Green maintains that the penalty imposed was too severe. In New York, a disciplinary penalty will be upheld unless "it is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." *Pell v. Board of Education*, 34 N.Y.2d 222 (1974). Green was found guilty of refusing to submit to a pat frisk, engaging in violent conduct, and assaulting an officer. The penalty of twelve months in SHU with loss of privileges and the recommended two months loss of good time credit is proportionate to the offenses with which Green was found guilty.

In light of the foregoing, the court finds that Green's petition is without merit. Accordingly, the petition is **DISMISSED** and the relief sought by Green is **DENIED.**

**WHEREFORE**, it is hereby

**ORDERED** that Green's petition is **DISMISSED** and the relief sought is **DENIED**, and it is further

**ORDERED**, that the clerk serve a copy of this Decision and Order upon the parties.

**IT IS SO ORDERED.**

Albany, New York
December 22 , 2005

_____
Gary L. Sharpe
U.S. District Judge

13